[Civ. No. 12193. Second Appellate District, Division Two.—December 29, 1939.]

WILLIAM H. LUMMUS, Plaintiff and Appellant, v. CITY OF VERNON (a Municipal Corporation) et al., Respondents; SOUTHERN CALIFORNIA WATER COMPANY (a Corporation), Defendant and Appellant.

S. S. Hahn and W. O. Graf for Plaintiff and Appellant.

R. G. Blanchard and Paul Overton for Defendant and Appellant.

Thomas V. Cassidy, City Attorney, Young & Kelly and E. L. Searle for Respondents.

McCOMB, J.—These are appeals by (a) defendant Southern California Water Company from a judgment after trial before the court without a jury awarding plaintiff (1) $4,500 for damages to his building, (2) $989 for loss of rentals, and from a judgment in favor of cross-complainant City of Vernon against said defendant in the sum of $1750—all predicated upon the negligence of said defendant; and (b) plaintiff from a judgment in favor of defendants, City of Vernon, a municipal corporation, Francis Bates, city engineer, and K. E. Wattson, construction superintendent, of said city.

The essential facts are:

For some months prior to February 6, 1937, the Works Progress Administration (hereinafter designated as the WPA) had been engaged in constructing a sewer drain system within the boundary lines of defendant City of Vernon, said city being the "sponsor" of the project. In the

course of the work the WPA had constructed one section of storm drain consisting of reinforced cement concrete sewer pipe having an inside diameter of 39 inches, an oustide diameter of 42 inches, and 8 feet in length, at the intersection of Thirty-seventh Street and Santa Fe Avenue. This section of sewer was 57 feet in length and extended northerly from the southeasterly corner of Thirty-seventh Street and Santa Fe Avenue along the easterly curb line of said avenue, extending across Thirty-seventh Street and northerly of the northeasterly curb of Thirty-seventh Street and Santa Fe Avenue. The section of pipe was constructed and installed substantially as follows:

The WPA excavated a square pit approximately 10 feet on all sides and 15 to 18 feet in depth at the southeast corner of the intersection. Around the sides of this pit, for the purpose of keeping the sandy soil from caving in, there was constructed a sheeting, being 2 by 12 planking, 15 feet or longer, standing on end, placed edge to edge and braced from top to bottom. The operation of installing the sewer pipe was accomplished by lowering an 8-foot section of the 39-inch reinforced concrete pipe into the pit (hereinafter referred to as the jacking pit), and by attaching to it a semi-circular shield or cutting edge made of boiler plate ⅜ths of an inch in thickness, so designed that when attached to the upper half of the northerly end of the section of sewer pipe the shield extended and projected 18 inches ahead of it. It was then set in place by screw jacks having a capacity of exerting a force of 250 tons each. These jacks were placed in the jacking pit around the circumference of the southerly end of the reinforced cement concrete sewer pipe, with appropriate planking around the circumference of the sewer pipe so that the full force generated by the jacks could be exerted upon said pipe, forcing it in a northerly direction into the sand and soil at the northerly side of the jacking pit. The pipe had a sufficient size internally, to allow a man to work at all times in it, at the face or end of the pipe which was being forced northerly into the sandy soil. A breastboard was installed at the northerly end of the pipe, immediately under the ⅜ths-inch shield, in such a way that the upper half of the sewer pipe was closed. As the sewer pipe was jacked in a northerly direction as above outlined the men working inside of the pipe removed the sand as it was dis-

placed by the shield, so that the operation could continue uninterrupted. The pipe was jacked northerly 9 inches at a time, whereupon the jacks were removed, additional rigging placed behind them, and the operation repeated.

As soon as the first 8-foot piece of reinforced cement concrete pipe had been forced its full length into the sandy soil northerly of the jacking pit, a second section of the same dimensions was lowered into the jacking pit, fitted and cemented to the first section, and likewise forced in a northerly direction, thereby pushing the prior section ahead of it. This operation continued until the 16th day of December, 1936, when 57 feet of pipe had been jacked northerly along the easterly curb line of Santa Fe Avenue and were in place ready to be joined with sewer pipe to be thereafter jacked in an easterly direction from the westerly curb of Santa Fe Avenue.

About the 20th of January, 1937, defendant K. E. Wattson, construction superintendent of defendant City of Vernon, who had been furnished to the WPA for the purpose of supervising the construction of the work, was notified by the superintendent of the work that the WPA would be required to shut down within two days because of lack of funds. Shortly prior thereto there had been installed in the northerly end of the 57-foot section of sewer pipe above referred to a bulkhead constructed of 2x8 planks laid edgeways, each succeeding plank being nailed to the one immediately below it and installed in such a manner that the entire northerly end of the 57-foot section was completely closed.

About 8 A. M., February 6, 1937, defendant Wattson made an inspection of the above work, and although it was raining he observed that the jacking pit was dry and that no water was flowing into it. About 10:30 A. M. the same day he again visited the work and found surface water trickling into the jacking pit. This he stopped by repairing the dike which had been erected about the pit. Shortly after 11 A. M. he found water again flowing into the pit, and caused bags filled with sand to be placed around the dike to prevent surface water from flowing into the jacking pit. Shortly thereafter he heard the noise of flowing water at a point northerly from the jacking pit, and upon inspection found that the 8-inch asphaltic concrete pavement covering the intersection had been undermined for a distance of 20 or 30 feet northerly from the northerly side of the jacking pit, and that the void

under the pavement extended from 10 to 20 feet in width throughout its length. Water continued to flow in the undermined portion of the pavement until approximately 1 P. M., when a portion of the pavement on the easterly side of the intersection collapsed. It was then ascertained that the water was not coming from an 8-inch water main maintained at that point by the City of Vernon, but was coming from a 2-inch water main maintained by defendant Southern California Water Company. The water continued to flow from the 2-inch water main without interruption until a further collapse of the pavement broke the 8-inch water main maintained by the city. Thereafter and as a result of the washing away of the subsurface, the southwesterly corner of a building owned by plaintiff, located at the northeasterly corner of the intersection of Thirty-seventh Street and Santa Fe Avenue, collapsed. The building at the time was under lease by plaintiff to Mr. Hatch for a rental of $390 per month. The lease contained, among others, these provisions:

"If the demised premises, or the building of which said premises may be a part, are damaged by fire, earthquake, or other calamity or other action of the elements, so as to render the said building wholly or in part unfit for occupancy, and if the damages are such that the building cannot be restored with reasonable diligence within forty-five (45) working days (of eight hours each), after the commencement of actual work, and if the Lessor shall elect to wreck and remove the damaged building, then this lease may be terminated. . . . In case of any lesser damage by any of the above causes, or in case this lease be not terminated as aforesaid, the said building shall be restored with all reasonable speed by the Lessor at the latter's own expense, and the Lessee shall pay only a reasonable rent during the period of such restoration for such parts, if any, of the demised premises as shall be fit for occupancy by Lessee. In no event shall Lessee be entitled to any damages for any loss occasioned by the injury to or destruction of said building or of Lessee's property, nor shall any rent be abated if Lessee is able to carry on his business as usual in the demised premises."

Plaintiff at his own expense fully restored the building, it requiring more than three months to make the repairs. During this time the lessee remained in possession of a por-

tion of the building and continued to operate his business as usual. Plaintiff, however, during the period that the building was being repaired, voluntarily reduced the lessee's rent from $390 per month to $300 per month, effecting a saving to the tenant during the period of repairs of $989.

Defendant relies for reversal of the judgment on these propositions:

*First: There is no substantial evidence to support the following findings of fact of the trial court:*

*"VI*

*"That the collapse of the pavement in front of and adjacent to plaintiff's building and the breaking of the water main maintained and operated by the City of Vernon, a municipal corporation, were, and each of them was directly and proximately caused by the defective condition of the water main maintained and operated by defendant Southern California Water Company, and by the negligent and careless operation and maintenance of said last-mentioned water main by Southern California Water Company, and that it is not true that the collapse of plaintiff's building or any other damage suffered by plaintiff was directly and/or proximately caused by any act or omission of the City of Vernon, a Municipal Corporation, or of the defendants, Francis Bates and K. E. Wattson."*

*"V*

*" . . . neither the defendant City of Vernon, a municipal corporation, nor Francis Bates, as City Engineer, nor K. E. Wattson, as Construction Superintendent, nor any of said defendants, had any jurisdiction or control over the construction, operation or maintenance of said last-mentioned storm drain at any of the times mentioned in plaintiff's second amended complaint or at any of the times between the 18th day of September, 1935, and the 7th day of February, 1937."*

*Second: Plaintiff did not suffer any damage as a result of any negligent act of the defendant Southern California Water Company.*

*Third: The trial court improperly allowed plaintiff to recover for plaintiff's loss of rentals.*

▊ The first proposition is untenable. An examination of the record discloses substantial evidence to sustain the facts set forth above and also the trial court's findings of fact. For example, it was conceded by defendant Southern

California Water Company that the 2-inch pipe maintained by them and which broke had been repaired in 1934 with a Dayton union. William Merrithew, a witness on behalf of plaintiff, duly qualified as an expert upon the subject, testified that he found, where the break occurred, a piece of the 2-inch pipe with a Dayton union and that one end of the pipe was broken off; that a Dayton union was a makeshift joint used in emergencies only; that he examined the repair work of said defendants and that it was not good construction; also that it was not in accordance with good practice to make a connection in the manner employed by said defendant. This testimony of itself was substantial evidence to support an inference by the trial court that defendant company had negligently and carelessly operated and maintained its water main.

Defendant Wattson testified that he saw evidence that water was undermining the intersection at 11 A. M. of February 6, 1937; that when the pavement caved in he saw water coming from the 2-inch line of the defendant Southern California Water Company.

Mr. Biggs testified that he saw water coming from the same 2-inch line at 1 P. M. of the same day. He further testified that the water-line of the defendant City of Vernon did not break until a later time. It is conceded that the escaping water washed away the sand, undermining the pavement of the City of Vernon and the support for plaintiff's building with the resultant damage to it.

The foregoing gives substantial support to the trial court's inference that the sole proximate cause of the damage to plaintiff's store and to defendant City of Vernon's pavement was the break in the 2-inch pipe owned and maintained by the defendant Southern California Water Company. This being true, said defendant was liable to the City of Vernon for the damage which resulted to its property, the amount thereof being $1750, and for any damage resulting to plaintiff.

Because of our conclusions as set forth above it is unnecessary to consider whether the doctrine of *res ipsa loquitur* is applicable in this case.

█ The second proposition is likewise untenable. It is true that the lease between plaintiff and his lessee contained this provision:

"The Lessor shall not be called upon or required to make any repairs, alterations, additions or improvements whatsoever, in, to, or about the demised premises or any part thereof (except as herein otherwise expressly provided), and the Lessee shall save the Lessor free and harmless from any liability on account of the requirement of any such repairs, alterations, additions or improvements."

However, the detriment suffered by the building rendered it "in part unfit for occupancy", which imposed the obligation to repair upon the lessor. While making such repairs, the lessor protected lessee's merchandise against impairment, while the lessee continued to carry on his business in the usual way. The lease provided that if the building or the premises are damaged by fire, earthquake or other calamity, so as to render it wholly or in part unfit for occupancy, "the lease may be terminated within fifteen days after such disaster". It also provides that in case of a damage less than that which might make it unfit for occupancy, or in case the lease be not terminated as aforesaid, "said building shall be restored with all reasonable speed by the lessor at the latter's own expense and the lessee shall pay only a reasonable rent during the period of said restoration for such parts, if any, of the demised premises as shall be fit for occupancy by lessee". The lessee remained in the building and conducted his business. The lessor made the repairs "with all reasonable speed", as the lease provides, at his own expense in the sum of $4,500, which he was entitled to recover against defendant, Southern California Water Company, because of its said negligent acts.

The third proposition is tenable. By the terms of the lease between plaintiff and his tenant it was provided:

"In no event shall Lessee be entitled to any damages for any loss occasioned by the injury to or destruction of said building . . . nor shall any rent be abated if Lessee is able to carry on his business as usual in the demised premises."

In the present case it is uncontradicted that the lessee carried on his business as usual in the demised premises. Therefore, plaintiff could have recovered the full amount of the monthly rental from his tenant, and the adjustment which he made with him was purely voluntary upon his part. As a consequence he suffered no damage for which defendant

Southern California Water Company was liable to reimburse him.

For the foregoing reasons (a) the judgment in favor of plaintiff and against defendant Southern California Water Company is modified by striking therefrom the sum of $989 allowed for loss of rentals; otherwise such judgment is affirmed, and the judgment in favor of defendant City of Vernon on its cross-complaint against defendant Southern California Water Company is affirmed; and (b) the judgment in favor of defendants City of Vernon, a municipal corporation, Francis Bates, city engineer, and K. C. Wattson, construction superintendent of the City of Vernon, is affirmed.

Moore, P. J., concurred.

WOOD, J., Concurring.—I concur in the judgment in all respects except that I think that plaintiff should be allowed to recover for loss of rentals. Under the terms of the lease the lessee was required to ''pay only a reasonable rent during the period of such restoration for such parts, if any, of the demised premises as shall be fit for occupancy by the lessee''. Evidently, the plaintiff and his tenant agreed upon the proper amount to be paid and the trial court was satisfied that the amount agreed upon was reasonable.